**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 21-MJ-145 (ZMF)** |
| | : | |
| **MATTHEW RYAN MILLER,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a dangerous weapon – a fire extinguisher) of the federal bail statute. The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

    **I.**        **Procedural Posture**

On January 25, 2021, Matthew Miller (hereinafter the "defendant") was arrested in Maryland on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Zia M. Faruqui in connection with a Criminal Complaint charging the defendant with Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); Knowingly Engaged in Disorderly or Disruptive Conduct in any Restricted Building or Grounds, with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); Injuring Erection or Architectural Feature in the Capitol Grounds, in violation of 40 U.S.C.

1

5104(d); and Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 18 U.S.C. §§ 5104(e)(2)(D), and (e)(2)(F).

## II.       Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210, see also Williams, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. See 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case require the Court to conclude that there is no condition or combination of conditions that would assure the safety of the community. See 18 U.S.C. § 3142(e)(1).

## A.       Nature and Circumstances of the Offenses Charged

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. The U.S. Capitol is secured

2

24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of

Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there. Among those persons was the defendant, Matthew Miller, who traveled from his home, in Maryland, to participate. MILLER was dressed in a black cowboy hat, a Washington Capitals red, white and blue jersey, and a black backpack with blue trim on the shoulder straps and was captured discharging a fire extinguisher upon the steps leading to an entrance to the U.S. Capitol building. That photo, bearing the copyright of "Getty Images," appears below as IMAGE-1 (MILLER circled within photo):



The FBI collected images obtained through open source media, to include online tips and complaints. One of the images obtained was a "screenshot" of a social media post to an Instagram account. The header accompanying this screenshot contained a profile picture of the user and the words "President's Park (White House)." That screenshot (IMAGE-2, below) was provided by a cooperating witness, hereinafter "CW-1." CW-1 is familiar with and has been familiar with MILLER for approximately seven years. CW-1 confirmed IMAGE-2 was obtained from the Instagram account and recognized it as belonging to MILLER.



**IMAGE-2**

Although the male suspect's face in the Instagram screenshot (IMAGE-2) was obscured by large goggle-style sunglasses and a black bandana face mask with a skull design, CW-1 was confident identifying the male suspect in IMAGE-2 as MILLER, because MILLER has maintained the same hairstyle for approximately seven years, and because the male suspect in the screenshot captured is consistent with MILLER's appearance and physical characteristics.

An additional photo was obtained from Getty Images (IMAGE-3 below), which captures the suspect without a mask on. CW-1 believed the unmasked suspect circled in IMAGE-3 to be

MILLER based on the similarity and likeness of physical characteristics and matching clothing from the Instagram screenshot (IMAGE-2).  For the same reason, CW-1 believed MILLER was both the suspect depicted deploying a fire extinguisher in IMAGE-1 and the unmasked suspect circled in IMAGE-3.



**IMAGE-3**

CW-1 further recognized MILLER depicted from behind in the below photograph (IMAGE-4) wearing the distinctive black cowboy hat, the Washington Capitals jersey, and both the Maryland State Flag and the Gadsden Flag[1] tied around his neck as a cape or scarf, which is consistent with the manner MILLER wore the flag in IMAGE-3 above.

---

[1] The Gadsden Flag, with its distinctive phrase "Don't Tread on Me," dates back to 1775.  More recently, it has become a symbol for the Tea Party, Second Amendment advocates, and organizations opposing government overreach.



**IMAGE 4**

Investigators also located a Facebook account which contained several photos they believed to be of MILLER, including the below photograph (IMAGE-5) received through the FBI online tips, identified as coming from MILLER's Facebook account. The individual's appearance in the Facebook photograph is consistent with a photograph of MILLER obtained from the Maryland Motor Vehicle Administration. CW-1 was shown photographs from the Facebook account believed to be utilized by MILLER. In addition to positively identifying MILLER in those photographs, CW-1 also provided the names of MILLER's associates as depicted in the photos obtained from the Facebook account, further demonstrating CW-1's familiarity with MILLER. Moreover, investigators were unable to access both the Instagram and Facebook accounts believed to be MILLER's because both accounts had been deleted shortly after January 6, 2021.



**IMAGE-5**

In addition, the FBI reviewed other images of the riots described above which depict other activities of MILLER on the U.S. Capitol Grounds. IMAGE 7 & 8 below depict a suspect, believed to be MILLER, wearing the distinctive black cowboy hat, Washington Capitals jersey, backpack, Gadsden Flag, and Maryland State flag; utilizing a section of the temporary barriers for crowd control as a ladder to scale the walls of the west side of the Capitol plaza; and assisting other crowd members with scaling Capitol walls and other architectural obstacles on the U.S. Capitol grounds.



**IMAGE-7**



**IMAGE-8**

FBI Special Agents and undersigned counsel then secured a criminal complaint and warrant for the defendant's arrest.

### B.     <u>Weight of the Evidence against the Defendant</u>

The second factor for the Court's consideration, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is strong. As set forth above, the defendant participated in the riots on the U.S. Capitol and was photographed deploying a fire extinguisher on steps leading in to one of the entrances on the Capitol Building and using a barrier to climb the wall on Capitol Grounds. A source familiar with the defendant for many years identified the defendant in multiple photographs taken during the riots. Moreover, given the sheer number of photographs and videos taken at the Capitol on January 6, 2021 – as well as internal surveillance footage – the United States anticipates that its evidence against the defendant will increase as agents are able to acquire and review that additional footage.

### C.     <u>The Defendant's History and Characteristics</u>

Pretrial detention is appropriate in this case, notwithstanding that the defendant has no prior criminal convictions. As Magistrate Judge Meriweather has noted in a different case, in <u>Willis</u>:

> Mr. Willis raised strong arguments, but did not rebut the presumption of detention. The lack of criminal record may rebut the presumption of detention in some cases, but it does not always have that effect. <u>Compare</u> <u>United States v. Soliman</u>, No. 4:13CR13-4-RAJ-TEM, 2013 WL 1718767, * 2 (E.D. Va. Apr. 19, 2013) (noting that proffer that included a clean criminal record rebutted the presumption of detention), with <u>United States v. Artis</u>, 607 F. App'x 95, 97 (2d Cir. 2015) (concluding that alleged weakness of the case and defendant's lack of a criminal record was "not so compelling as to defeat the presumption" of detention); <u>see</u> <u>United States v. Gandy</u>, 1989 WL 16825, *1 (D.C. Cir. Feb. 23, 1989) (per curiam) (affirming court's decision to detain defendant prior to trial notwithstanding her lack of a criminal record). Here, Mr. Willis's clean criminal record was insufficient to rebut the presumption, particularly in light of the strong evidence linking Mr. Willis to a second armed robbery that he allegedly committed very shortly after the charged robbery. Moreover, even if Mr. Willis had rebutted the presumption of detention, weighing the four Bail Reform Act factors demonstrates that he should be held without bond pending trial.

See Order of Detention Pending Trial, United States v. Jaron Willis, Case No. 19-CR-383 (TJK/RMM) (Docket Entry 24 at 7); see also Order of Detention Pending Trial, United States v. Jacob Kyle Jordan, Case No. 20-CR-55 (TFH) (Docket Entry 13) (ordering that defendant Jordan be detained pending trial notwithstanding that he had no prior felony convictions and support in the community). Moreover, the defendant's willingness to take martial law into his own hands says more about the defendant's characteristics than any criminal history ever could.  Nevertheless, even if the Court determines otherwise, the remaining factors weigh in favor of detention.

**D.    Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, weighs in favor of detention. The defendant self-identifies as a member of the "Patriotic American Cowboys" and donned a flag, known as the Gadsden Flag, during the riots at the U.S. Capitol on January 6, 2021. As noted in footnote 1, the Gadsden Flag has more recently become a symbol for the Tea Party, Second Amendment advocates, and organizations opposing government overreach. The defendant voluntarily chose to join a riot seeking to disrupt and impede lawmakers who were going to certify the Presidential election. The defendant further chose to take a fire extinguisher into his hands and deploy that fire extinguisher into an entrance of the U.S. Capitol, believed to be occupied by U.S. Capitol Police Officers. If nothing else, the events of January 6, 2021, have exposed the size and determination of right-wing fringe groups in the United States, and their willingness to place themselves and others in danger to further their political ideology. Anyone who would act as the defendant acted is a danger to the community.

### III. <u>Conclusion</u>

The government respectfully requests that the Court issue an Order granting its motion that

the defendant be held without bond pending trial.

                              Respectfully submitted,

                              MICHAEL R. SHERWIN
                              ACTING UNITED STATES ATTORNEY
                              New York Bar No. 4444188

By:   /s/ *Kaitlin A. Vaillancourt*
            Kaitlin A. Vaillancourt
            D.C. Bar No. 1027737
            Assistant United States Attorney
            Federal Major Crimes Section
            United States Attorney's Office for D.C.
            555 Fourth Street, N.W., Fourth Floor
            Washington, D.C. 20530
            E-mail: Kaitlin.Vaillancourt@usdoj.gov
            Telephone: (202) 252-2421

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon counsel of

record, this 25th day of January 2021.

                                /s/
                                Kaitlin A. Vaillancourt
                                Assistant United States Attorney